# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

WILLIE WRIGHT,          )
                        )
        **Plaintiff,**     )
                        )
**v.**                    )        **No. 11-3071-STA-tmp**
                        )
**MEMPHIS LIGHT, GAS & WATER** )
**DIVISION,**             )
                        )
        **Defendant.**    )

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Memphis Light, Gas & Water Division ("MLGW")'s Motion for Summary Judgment (D.E. # 38) filed on January 25, 2013. Plaintiff Willie Wright has filed a response memorandum in opposition (D.E. # 49), and Defendant has filed a reply brief.[1] For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

### I. Factual Summary

The following material facts are undisputed for purposes of summary judgment unless otherwise noted.[2] Plaintiff Willie Wright is a 60 year-old male. (Def.'s Statement of Undisputed

---

[1] Defendant has filed a separate Motion to Strike (D.E. # 48) Plaintiff's memorandum of law, which the Court addresses more fully below.

[2] Local Rule 56.1(a) states that a moving party's statement of material facts should not exceed 10 pages without prior court approval. Defendant filed a statement of undisputed facts (D.E. # 39) which is over 20 pages long and consists of over 100 numbered statements. Although the Court granted Defendant leave to exceed the page limit, *see* Order Granting Def.'s

Facts ¶ 1.)  Plaintiff has spoken with a stutter his entire life (i.e., from the time he learned to talk). (*Id.* ¶ 2.)[3]  Plaintiff completed an application for employment with MLGW on May 21, 1985.  (*Id.* ¶ 6.)  The application asked if the applicant was a handicapped individual and provided space to specify the handicap.  (*Id.* ¶ 9.)   On this section of his application for employment, Plaintiff responded "none."  (*Id.*)  The application also provided a space to specify a disability, in which Plaintiff wrote "none."  (*Id.* ¶ 10.)  Defendant ultimately hired Plaintiff.  (*Id.* ¶ 11.)

Defendant has a position titled Customer Service Tech III. (*Id.* ¶ 14.)  The position involves investigating customer complaints about electric, gas, or water services; responding to appliance or heating equipment malfunctions; making repairs and adjustments; and advising customers about needed repairs.  (*Id.*)  The list of job duties and responsibilities includes but is not limited to (1) inspecting and electric, gas and water services, appliances, and equipment for correct installation; (2) troubleshooting leaks or other malfunctions; (3) advising customers of needed repairs; (4) discontinuing electric or gas service if appliances or equipment are not operating safely; (5) investigating hazardous conditions such as downed lines and major gas leaks; (6) answering calls for fires, explosions, and gas leaks; and (7) changing gas meters and regulators when there is a malfunction that interrupts service.  (*Id.* ¶ 15.)

Defendant has a training program for candidates who apply for Tech III positions.  In order

---

Unopposed Mot. to Exceed Page Limit, Jan. 29, 2013 (D.E. # 41), the Court finds that several statements of fact are not actually material to the Court's analysis for purposes of Rule 56.  The Court omits those facts in its recitation of the undisputed evidence here.

[3] Plaintiff has asserted additional facts about his impairment, which is known as developmental stuttering.  To the extent that proof of Plaintiff's actual disability is material to the Court's summary judgment analysis, the Court will address the evidence separately in this Order.

to bid for an open position in the training program, a candidate must possess a certain level of seniority, must successfully complete coursework in basic electricity and fundamentals of gas, and must successfully pass the customer contact test.  (*Id.* ¶ 16.)  The candidate must then interview with MLGW human resources and an area supervisor.  (*Id.*)

In 2009, MLGW had an opening in the Customer Service training program.  (*Id.* ¶ 17.) Plaintiff possessed all of the qualifications to bid for the opening and interviewed with HR representative Eric Conway and area supervisor Kenneth Harper ("Harper").  (*Id.*)  During the two-hour interview, Plaintiff stuttered.  (*Id.* ¶¶ 18, 19.)  The interviewers did not ask Plaintiff about his stutter.  (*Id.* ¶ 20.)  At no time during the interview did Plaintiff inform the interviewers that he was disabled or request an accommodation for a disability if selected for the training program.  (*Id.* ¶ 21.)[4]  Following the interview, MLGW selected Plaintiff for the training program. (*Id.* ¶ 22.)

According to Defendant, the training program is divided into classroom instruction and field experience, leading up to certification to become a permanent Tech III.  (*Id.* ¶ 23.)  Before starting their classroom instruction, trainees were allowed to ride with an experienced Tech III for two weeks, observe the duties of the job, and decide whether to give up an existing position and continue in the training program.  (*Id.* ¶ 24.)  While the parties agree that Plaintiff did not complete the two-week ride along prior to starting his classroom training, they dispute whether Plaintiff ever participated in a ride along.[5]  Plaintiff's classroom instructor was Shelby Glore ("Glore"). (*Id.* ¶ 27.)

---

[4] While Plaintiff does not dispute this statement for purposes of summary judgment, Plaintiff adds that his is not an accommodation claim.

[5] Defendant cites the testimony of Scott Campbell as support for its contention that Plaintiff completed the two-week ride along with Campbell.  Campbell actually testified, "To the best of my knowledge, I think that's [i.e. the two-week ride along] the only time Mr. Wright ever rode with me. . .  during those first two weeks."  Campbell Dep. 15:17-21, Dec. 6, 2012 (D.E. #

3

The training program lasted six months, during which time Plaintiff and his four classmates spent one to two weeks in the classroom followed by one to two weeks in the field riding with an experienced Tech III. (*Id.* ¶ 29.)  The trainees received instruction on gas and gas controls, gas appliances, venting and ventilation, electricity, electric circuits, piping, and the correct use of various tools and instruments. (*Id.* ¶ 30.)

The record does not clearly indicate when Plaintiff began the training program.  Defendant claims that Plaintiff's last day in his previous department was February 16, 2009; however, Plaintiff asserts that his first day of class was March 29, 2009.  Regardless, on or about April 5, 2009, Plaintiff had a non-job related accident and fractured a bone in his left foot, forcing him to miss 10 to 12 weeks of class. (*Id.* ¶ 31.)  Despite missing this amount of time, Plaintiff wanted to continue in the program and received some extra help from Glore to catch up. (*Id.* ¶ 32.)  Plaintiff passed all ten written exams and completed the classroom component of the training on September 1, 2009. (*Id.* ¶ 34.)  Plaintiff believes that his classmates and his instructors treated him fairly. (*Id.* ¶ 33.)  Even so, Plaintiff testified that Glore once made the comment to him privately that he was proud of him for making up the classroom work but added that Plaintiff's "speech could hold him back." (*Id.*

────────────────────

39-7).

Plaintiff argues that Campbell could not specifically remember whether Plaintiff rode with him.  Plaintiff also cites his own deposition testimony at pages 62 through 66.  Upon inspection, page 65 of Plaintiff's deposition transcript is not part of the record, and the other pages cited do not address whether Plaintiff completed the two-week ride along or not. Nevertheless, Plaintiff's testimony does establish that Plaintiff began his classroom training after the training had already begun and that his classmates had already completed a two-week ride along.  This evidence arguably creates the reasonable inference that Plaintiff did not complete his two-week ride along prior to starting his classroom instruction.  At the very least then, Plaintiff has raised an issue of fact, which cannot be resolved at summary judgment.  For reasons more fully explained below, the Court finds that the dispute is not material to its analysis of the issues presented.

¶ 53.)

After graduating from the classroom, a trainee begins his or her 90-day probationary period. (*Id.* ¶ 35.)[6]  Trainees have at least 90 days to achieve certification by passing a final certification ride with an evaluator.  (*Id.* ¶ 37.)  During the probationary period, trainees ride with experienced Tech III's and perform the job duties of a Tech III under the supervision of the experienced technician. (*Id.* ¶ 38.)  Kenneth Harper ("Harper"), the MLGW area supervisor who interviewed Plaintiff and selected him for the Tech III training program, supervised Plaintiff during his probationary period and evaluated Plaintiff prior to his first certification attempt.  (*Id.* ¶¶ 39, 40.)

Plaintiff made his first attempt at certification with Glore, his classroom instructor, on February 22, 2010 and February 23, 2010.  (*Id.* ¶ 41.)  The number of days a Tech III trainee rides for certification depends on the type of calls received during the day.  (*Id.* ¶ 42.)  Certification can easily be completed in one day but sometimes can take two or three days to complete, depending on the type of calls received.  (*Id.*)  Over the two days of Plaintiff's first certification attempt, Plaintiff responded to seven electric and gas calls.  (*Id.* ¶ 43.)  Glore documented his evaluation and noted that Plaintiff satisfactorily completed every task related to speech during the calls.  (*Id.* ¶¶ 44-46.)  Glore concluded that Plaintiff had the skills necessary to achieve certification on electric calls; however, Glore observed that Plaintiff failed to handle gas calls properly.  (*Id.* ¶ 47.)  Specifically, Plaintiff failed to demonstrate basic skills in venting, ventilation, and combustion of gas appliances; failed to follow procedures for a carbon monoxide call; failed to notice vent pipes touching combustible material; and failed to notice improper installation of diverters on top of gas appliances.  (*Id.*)  Based

_____

[6] Plaintiff has asserted a number of additional facts to elaborate further on Defendant's assertion about the 90-day probationary period.  The Court addresses these additional facts below.

on these observations, Glore determined that Plaintiff did not possess the skills to achieve his Tech

III certification. (*Id.* ¶ 48.)[7] Glore denies that anyone instructed him to fail Plaintiff because of

speech or any other reason. (*Id.* ¶ 49.) Plaintiff testified that the deficiencies noted by Glore were

"nitpicky." (*Id.* ¶ 52.) Plaintiff believes that Glore discriminated against him on the basis of his

stutter because of Glore's previous remark that Plaintiff's "speech could hold him back." (*Id.* ¶ 53.)

Thereafter, Plaintiff was given an additional 30 days of training which would culminate in

a final certification attempt. (*Id.* ¶ 58.)[8] During this retraining period, Harper, Plaintiff's area

supervisor, and Scott Campbell ("Campbell"), a shift supervisor in customer service field operations,

evaluated Plaintiff. (*Id.* ¶ 59.) Plaintiff's evaluations were satisfactory in every area except for his

failure to recognize unsafe gas vent pipe configurations. (*Id.*) Plaintiff made his second attempt at

certification on July 6, 2010. (*Id.* ¶ 60.) Plaintiff's certification evaluator during the ride was

Donald Cupples ("Cupples"). (*Id.*) Prior to this certification ride, Plaintiff and Cupples did not

know each other and had never met. (*Id.* ¶¶ 61, 62.) During the certification ride, Plaintiff

responded to electric and gas related calls at five addresses. (*Id.* ¶ 63.) Cupples documented the

following deficiencies in Plaintiff's performance: difficulty in reading a map book and driving to a

---

[7] Plaintiff also cites evidence concerning two other trainees, Brenda Flowers and Douglas Rayburn. According to Plaintiff, despite the fact that Flowers did not perform as well as Plaintiff during training, Flowers eventually received her certification and Plaintiff did not. The Court discusses the evidence related to these comparators in its analysis of the pretext issue.

[8] Defendant states that this additional opportunity to certify was a result of Plaintiff's filing a union grievance. However, the letter informing Plaintiff of his failure to achieve certification from his first ride with Glore and his opportunity for an additional 30 days of training was dated March 19, 2010 (D.E. # 39-15). The record shows that Plaintiff filed his first written grievance on April 8, 2010, and stated that his grievance occurred March 30, 2010 (D.E. # 39-14). It remains unclear to the Court how Plaintiff was given 30 days of additional training on March 19 in response to a grievance filed March 30.

call and failure to follow proper procedures on an electric call. (*Id.* ¶¶ 64-65.) Based on his observations, Cupples made the decision not to certify Plaintiff as a Tech III. (*Id.* ¶ 66.) Cupples testified that no one directed him not to certify Plaintiff because of his speech of for any other reason. (*Id.* ¶ 67.) None of the deficiencies Cupples noted were related to Plaintiff's speech. (*Id.* ¶ 70.) Plaintiff admitted that Cupples said nothing to him to suggest that Cupples had any bias or prejudice against him. (*Id.* ¶ 71.) Plaintiff believes that "everything leads back to Shelby Glore." (*Id.* ¶ 72.)

Plaintiff is a member of the International Brotherhood of Electrical Workers ("IBEW"). (*Id.* ¶ 54.) The IBEW filed several grievances on Plaintiff's behalf related to his failed certification attempts. (*Id.* ¶ 56.) Plaintiff's first grievance was filed on March 30, 2010, alleging that unnamed members of management had not provided Plaintiff with "the just training for" the Tech III position. (*Id.* ¶ 57.) Plaintiff filed two more grievances on July 7, 2010, and July 16, 2010, respectively, alleging that Lamar Lusk ("Lusk"), the supervisor over the customer service department, and his staff had conspired to deny Plaintiff his Tech III certification. (*Id.* ¶ 77.)[9]  After production of documents and a full hearing, Defendant and the IBEW resolved the grievances on November 3, 2010, and agreed that Plaintiff would be given a third opportunity to achieve certification with another evaluator, Milton Bluitt ("Bluitt"). (*Id.* ¶ 79.)

Plaintiff's third certification ride occurred on November 12, 2010. (*Id.* ¶ 80.) Bluitt testified that he was the sole decision-maker as to this certification ride. (*Id.* ¶¶ 80, 102.) Bluitt had never ridden with Plaintiff prior to the certification attempt and had no knowledge of who had ridden with Plaintiff during his previous certification rides. (*Id.* ¶¶ 81, 82.) During the ride Plaintiff handled

---

[9] The Court notes that Plaintiff's initial response to the statement of undisputed facts (D.E. # 47) contained several omissions, which Plaintiff corrected in a subsequent filing (D.E. # 52).

electric and gas calls at four different addresses.  (*Id.* ¶ 85.)  Bluitt documented that Plaintiff

satisfactorily completed each task related to speech on each call.  (*Id.* ¶ 87.)  The only issue during

the third certification ride was a mistake Plaintiff made handling a gas leak.  (*Id.* ¶ 89.)  Plaintiff

explained that it was a simple mistake and that he thought space heaters at the residence were off and

he turned them back on.  (*Id.* ¶ 90.)  Bluitt decided not to certify Plaintiff as a result of the mistake

Plaintiff made on the gas leak.  (*Id.* ¶¶ 92-93.)  Bluitt testified that Plaintiff's speech had no bearing

on his decision not to certify him.  (*Id.* ¶¶ 98, 99.)  Plaintiff lacks any evidence that Bluitt's decision

not to certify him had anything to do with his speech.  (*Id.* ¶ 100.)[10]  Bluitt further testified that he

never heard anyone talk about Plaintiff's stuttering or about pushing Plaintiff to retire. (*Id.* ¶¶ 103,

104.)[11]

    Plaintiff has included a statement of the following additional facts in his briefing, to which

Defendant has responded.[12]  These facts are undisputed for purposes of summary judgment unless

---

[10] Plaintiff's responses to these assertions (D.E. # 46, ¶¶ 98, 99) is simply "disputed."  As the non-moving party, Plaintiff has the burden to demonstrate "that the fact is disputed" with a "specific citation to the record."  Local R. 56.1(b).  Because of Plaintiff's failure to "properly address another party's assertion of fact," the Court will "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

[11] Defendant's remaining statements of fact concern Plaintiff's EEOC charge, the EEOC's findings that Plaintiff's claim of disability and age discrimination were unsupported, and facts relating to Plaintiff's age discrimination claim.  (Def.'s Statement of Undisputed Facts ¶¶ 105-109.)  The Court finds it unnecessary to address this evidence at summary judgment.  Therefore, the Court will not include these facts in its recitation of the record evidence.

[12] Local Rule 56.1(b) allows a non-moving party to provide "a *concise* statement of any *additional* facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried."  Local R. 56.1(b) (emphasis added).  Plaintiff's statement of additional facts (D.E. # 46) is 16 pages long and consists of 90 numbered paragraphs.  The Court finds that the vast majority of the facts are not "additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried."  Rather Plaintiff has repeated or recast many of the facts already

otherwise noted.  Plaintiff begins with a number of assertions about his developmental stutter and his belief about how others perceived him because of his stutter.  (Pl.'s Statement of Add'l Facts ¶¶ 1-22.)  The Court will address the record facts concerning Plaintiff's developmental stuttering condition more fully below.

As far as his training, Plaintiff asserts that he was the only one of his training cohorts who did not complete the two-week ride along with an experienced Tech III prior to the start of classroom instruction.  (*Id.* ¶¶ 50, 56.)  During his 90-day probationary period, Plaintiff rode with several experienced Tech III's including George Jones.  (*Id.* ¶ 59.)  Kenneth Harper was Plaintiff's supervisor during the probationary period and received feedback from George Jones that Plaintiff had difficulty retaining information Jones tried to impart to him.  (*Id.* ¶¶ 60, 61.)  Defendant adds that neither Harper nor George Jones were involved in Plaintiff's certification attempts or had any input in the decision not to certify Plaintiff.  (Def.'s Resp. to Pl.'s Add'l Facts ¶¶ 60, 62.)  Harper also testified that he had overheard some of the same employees who commented to him about Plaintiff's field performance joking about Plaintiff's stutter.  (Pl.'s Statement of Add'l Facts ¶ 62.)  Plaintiff heard other Tech III's joking about his stutter as well.  (*Id.* ¶ 63.)

At the beginning of the 90-day probationary period, each trainee is supposed to complete a

---

included in Defendant's statement of undisputed facts.  To the extent then that Plaintiff's asserted facts are not "additional," the Court does not recite them here.

Furthermore, the Court holds that many of the facts briefed by Plaintiff are not actually material to the Court's summary judgment analysis.  For example, Plaintiff asserts that his stuttering has affected his ability to compete for promotions at MLGW at other times during his employment, (*Id.* ¶¶ 23-25), and in particular resulted in disparate treatment during his tenure in the water treatment department between 1998 and 2009.  (*Id.* ¶¶ 26-29.)  Even accepting these facts as true, Plaintiff's ADA claim in this suit is not based on any of this conduct.  Therefore, these additional facts are not material to the issues presented.

pre-certification "evaluation ride" conducted by the class instructor (in this case Glore) and the area supervisor (Harper). (*Id.* ¶ 66.)  The purpose of the evaluation ride was to offer feedback and help the trainee shore up areas that needed improvement before the trainee's certification ride.  (*Id.* ¶ 67.) Plaintiff had his evaluation ride with Glore on October 28, 2009.  (*Id.* ¶ 68.)  According to Plaintiff, Glore emailed Harper on November 19, 2009, a list of observations about Plaintiff's performance during the evaluation ride.  (*Id.* ¶¶ 69, 70.)[13]  After Plaintiff's 90-day probationary period had ended, Harper conducted his evaluation ride with Plaintiff on February 15 and 18, 2010.  (*Id.* ¶ 73.)  Harper documented several areas during his evaluation ride with Plaintiff in which Plaintiff needed additional training.  (*Id.* ¶ 75.)  Harper testified that in his opinion, Plaintiff needed some weeks to correct his deficiencies before making his certification attempt.  (*Id.* ¶ 76.)  Plaintiff's certification ride with Glore took place four days after his evaluation ride with Harper.  (*Id.* ¶ 77.)

Michael Jones, one of the experienced Tech III's who worked with Plaintiff during his probationary period, testified that Defendant at first did not issue Plaintiff all of the proper tools for his training and that Plaintiff only received a tool bag once another tech reported the issue to Harper. (*Id.* ¶ 81.)  Prior to receiving the correct tools, Plaintiff carried the tools he had, a few crescent wrenches, in his lunch box.  (*Id.* ¶ 80.)  Although Plaintiff has cited no evidence in support of his

---

[13] The parties dispute the purpose of the observations listed in Glore's email.  Plaintiff asserts the email was intended to identify for Harper areas where Plaintiff needed more training and field experience during his probationary period.  (Pl.'s Statement of Add'l Facts ¶ 70.) Plaintiff further asserts that Harper never provided him with additional training in the areas identified by Glore, though the Court notes that Plaintiff has not cited the specific portion of the record to support this claim.  (*Id.* ¶¶ 71-72.)  Defendant claims that the evaluation ride and Glore's observations were actually intended only for Plaintiff's benefit.  (Def.'s Resp. to Pl.'s Add'l Facts ¶ 70.)  Whatever the purpose of Glore's observations, Plaintiff has not made the email part of the record.  What is more, the Court finds that this fact is not material to its summary judgment analysis.

contention, Plaintiff claims that MLGW policy also required the area supervisor to complete a certification ride with Plaintiff in the event the instructor did not grant certification and that Harper never conducted a certification ride with Plaintiff.  In all Plaintiff continued to work as a Tech III from December 10, 2009, through February 11, 2011.  (*Id.* ¶ 84.)  One Tech III Sydney Broady testified that he had ridden with Plaintiff dozens of times and that in his opinion Plaintiff responded safely on gas calls.  (*Id.* ¶ 85.)[14]  Plaintiff's four cohorts from his classroom training all received their certification on their first attempt in February 2010, and none of them have a disability.  (*Id.* ¶¶ 90, 91.)  Finally, Plaintiff asserts that Lamar Lusk, the supervisor in the customer service department, once remarked to him that "customer service would be a better place once we get rid of you," though Lusk denies that he ever made such a statement.  (*Id.* ¶ 89.)

## II. Objections to the Statement of Jesse Rivers

For purposes of summary judgment, Plaintiff seeks to introduce a statement made by Jesse Rivers, a retired MLGW area supervisor who is now deceased.  According to Michael Jones, Plaintiff's union steward and a Tech III with whom Plaintiff rode occasionally during his probationary period, Jones and Plaintiff encountered Rivers one day outside a barbershop.  (*Id.* ¶ 87.)  Jones testified that Rivers was aware of Plaintiff's problems achieving certification, and Jones questioned Rivers about the situation.  (*Id.*)  In response Rivers commented to Plaintiff, "Willie, you weren't supposed to be over here [in customer service]." (*Id.*)

Defendant has correctly argued that the Court should not consider inadmissible hearsay at

---

[14] Defendant responds that Broady's opinion is not material because Broady had no involvement in and no knowledge of Plaintiff's certification rides.  The Court considers Broady's testimony in its analysis of whether Plaintiff was "otherwise qualified" for his position.

summary judgment.[15]  Defendant contends that Rivers's statement actually constitutes hearsay within hearsay.  According to Defendant, Jones' testimony about Rivers's statement is hearsay, and Rivers's statement was arguably based on hearsay statements Rivers heard from unidentified third parties. "For double-hearsay statements to be admissible, each separate statement must either be excluded from the hearsay definition or fall within a hearsay exception."[16]  Whether the Court analyzes the statement as double hearsay or simply as hearsay, the Court holds that Rivers's statement is inadmissible.

Rivers's statement does not qualify as a statement "offered against an opposing party."[17]  In order for Rivers' statement to constitute an opponent admission, the statement must be "made by the party's agent or employee on a matter within the scope of [Rivers' employment] relationship and while it existed."[18]  Defendant argues that Rivers's statement did not concern a matter within the scope of his employment because Rivers was not Plaintiff's supervisor and had no involvement in Plaintiff's attempt to become a Tech III.  While Rivers's personal involvement in the adverse action against Plaintiff is not required,[19] Plaintiff must show that his Tech III training was within the scope of Rivers's employment.  The Court holds that Plaintiff has not laid this foundation.  The evidence

---

[15] *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 (6th Cir. 2012).

[16] *Id.* at 578 (citing Fed. R. Evid. 508) (other citation omitted).

[17] Fed. R. Evid. 801(d)(2)(D).

[18] *Id.*

[19] *Back*, 694 F3d. at 577 ("A statement is not hearsay under Rule 801(d)(2)(D) when it concerns a matter within the scope of the declarant's employment—there is no requirement that a declarant be directly involved in the adverse employment action.") (citation omitted).

shows that Rivers was an area supervisor but not over the service center where Plaintiff trained.[20]
There is no evidence that Rivers ever worked with Plaintiff or had any involvement in Plaintiff's
training.  Even though area supervisors like Rivers were responsible for training and evaluating Tech
III trainees in their own service centers, Plaintiff has not established how his training was within the
scope of Rivers's employment as an area supervisor in a different service center.  Therefore, the
Court holds that the statement would not be admissible under Rule 801(d)(2)(D).

Additionally, Plaintiff has  not shown how Rivers's statement comes in as an exception to
the hearsay rule for situations where a declarant is unavailable.  Rivers is now deceased, and Federal
Rule of Evidence 804(a) provides that a declarant is considered unavailable as a witness as a result
of death.[21]  Plaintiff then must show that Rivers's statement falls into one of the following categories:
former testimony; a statement under the belief of imminent death; a statement against interest; a
statement of personal or family history; or a statement offered against a party that wrongfully caused
the declarant's unavailability.[22]  Plaintiff has not established how any of the circumstances set out
in Rule 804(b) are met in this instance.  As such, the Court holds that the Rivers testimony is
inadmissible hearsay.

### III. Defendant's Motion to Strike

Defendant filed its Rule 56 Motion on January 25, 2013, making Plaintiff's brief in response

---

[20] Jones Dep. 61:11-13, Dec. 7, 2012 (D.E. # 50-7).  Jones also testified that Rivers was
retired.  *Id.*  It is not clear whether Rivers was retired at the time he made the statement or
whether he retired some time later.  If Rivers was retired, then he arguably did not make his
statement in the course of his employment with MLGW.

[21] Fed. R. Evid. 804(a)(4).

[22] Fed. R. Evid. 804(b)(1)-(6).

due by February 25, 2013.  On February 19, 2013, the Court granted Plaintiff's motion for an extension (D.E. # 43), which gave Plaintiff until March 8 to file his response.  On March 8, 2013, the Court granted Plaintiff's second motion for extension (D.E. # 45), which gave Plaintiff until March 12 to file his response.  Plaintiff filed his statement of additional facts (D.E. # 46) by the extended March 12 deadline.  However, Plaintiff did not file his separate response to Defendant's statement of undisputed facts (D.E. # 47) and his legal memorandum (D.E. # 49) until the following day, March 13, 2013.

Defendant has filed a Motion to Strike (D.E. # 48) Plaintiff's response to Defendant's statement of facts and memorandum of law as untimely.[23]  In his response in opposition to the Motion to Strike, Plaintiff concedes that his papers were in fact late but argues that his response to the statement of facts was filed at 12:20 A.M., a matter of only twenty minutes past the deadline.  Plaintiff filed his memorandum of law later the same day.  Plaintiff contends that under the circumstances Defendant cannot show prejudice from the late filings.  Plaintiff emphasizes the fact-intensive nature of the case and the complexity of the legal issues presented.  Counsel for Plaintiff has provided a declaration, explaining the difficulties he encountered in completing his response leading up to the deadline.  Plaintiff argues then that he can establish excusable neglect for his failure to meet the March 12 deadline.

Rule 6(b) states that "when an act may or must be done within a specified time, the court may for good cause, extend the time . . . on motion made after the time has expired if the party failed to

_____

[23] Defendant filed its Motion to Strike after Plaintiff filed his late response to Defendant's statement of facts but before Plaintiff filed his legal memorandum.  Even though Plaintiff had not yet filed his response brief at the time Defendant filed the Motion to Strike, Defendant requested that the Court strike any late-filed memorandum as untimely.

act because of excusable neglect."[24]   The Court must examine five factors to determine whether excusable neglect exists: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.[25]   The Court holds that Plaintiff has satisfied the excusable neglect standard in this case.  All five factors weigh in favor of accepting Plaintiff's late-filed summary judgment briefs. Therefore, Defendant's Motion to Strike is **DENIED**.

## IV.  The Parties' Arguments

Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claims for disability and age discrimination.  Defendant argues that Plaintiff cannot prove his *prima facie* case that Defendant discriminated against him because of his disability.  Plaintiff cannot show that he was otherwise qualified for the Tech III position.  The undisputed evidence shows that Plaintiff failed three different certification rides with three different evaluators.  Plaintiff has only his own opinion and the opinion of another Tech III who did not participate in any way in the three certification rides to establish his qualifications for the job.  Defendant contends that this proof is insufficient to survive summary judgment.  Defendant next argues that Plaintiff cannot prove that his stutter amounts to a disability for purposes of the ADA.  Specifically, Plaintiff cannot show that his stutter substantially limits a major life activity.  The evidence also shows that Plaintiff's speech was never a concern or factor in Plaintiff's failure to achieve certification on any of his three attempts.

---

[24] Fed. R. Civ. P. 6(b)(1)(B).

[25] *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)).

Defendant goes on to argue that even if Plaintiff can establish a *prima facie* case, Defendant had a legitimate, nondiscriminatory reason for not certifying Plaintiff.  All three evaluators during Plaintiff's certification rides reported material errors, which resulted in their independent decisions not to certify Plaintiff.  Defendant contends that Plaintiff cannot prove that he was denied certification because of his disability or that Defendant's legitimate reasons for denying certification are pretextual.  The single comment Plaintiff attributes to Glore, i.e. that his speech might hold him back, a comment which Glore denies ever making, is not enough to establish pretext.  Defendant also argues that there is no reason to apply a cat's paw theory of liability in this case.  The undisputed evidence shows that each of the three evaluators who conducted certification rides with Plaintiff arrived at their decisions independently and without any outside influence.  There is no evidence that Cupples or Bluitt had any intent to discriminate against Plaintiff.  Plaintiff is left to rely on his subjective belief that everything he experienced "went back" to Glore.  Defendant also seeks judgment as a matter of law on Plaintiff's age discrimination claim because Plaintiff has failed to adduce any evidence that someone under the age of 40 received more favorable treatment than Plaintiff.  Based on this record, Defendant argues that the Court should grant summary judgment on Plaintiff's disability and age discrimination claims.

Plaintiff has responded in opposition.  Plaintiff asserts that he can establish his qualifications for the Tech III position.  The record shows that Plaintiff had the requisite seniority, passed all of the pre-bid tests, and scored higher on the classroom exams than other trainees who were later certified.  Plaintiff worked eleven months in the customer service department performing the duties of a Tech III and riding with experienced Tech III's such as Sydney Broady who believed that Plaintiff possessed the skills to achieve certification.  Plaintiff argues that he can also prove that his stutter

constitutes a disability.  Plaintiff submits the expert report of Walter H. Manning, Ph.D., as evidence that his stutter affects a major life activity.  Plaintiff emphasizes that he was denied the same opportunities as other trainees because of his speech, which presumably goes to the issue of pretext. For example, Glore stated to Plaintiff that his speech might hold him back.  Harper who had responsibility to train Plaintiff during his probationary period did nothing to help him.  Plaintiff was also denied the proper tools and tool bag.  Harper admitted that some of the individuals who gave him feedback about Plaintiff made fun of Plaintiff's speech.  Plaintiff was given only four days between his evaluation ride with Harper and his certification ride with Glore.  Plaintiff also points to the evidence that Lamar Lusk once remarked that the customer service department would be better off without Plaintiff and that Lusk asked Cupples to conduct the second certification ride with Plaintiff.  Plaintiff has not responded in his brief to Defendant's argument about his age discrimination claim.[26]

In its reply brief,[27] Defendant addresses Plaintiff's claim that he was qualified for the Tech III position based on his testing and seniority.  According to Defendant, Plaintiff has confused being eligible to train for the position with being qualified for the job.  Defendant also disputes the notion

---

[26] Plaintiff does object in his responses to Defendant's statement of undisputed facts that certain facts related to age are immaterial because he is not required to adduce proof of a comparator employee under the age of 40.  Pl.'s Resp. to Def.'s Statement of Fact ¶¶ 108, 109 (D.E. # 47).  Otherwise, Plaintiff has not addressed Defendant's legal arguments in his memorandum of law.

[27] Defendant's reply brief exceeds the Local Rule's page limit for replies in support of a Rule 56 motion.  Defendant filed contemporaneous with its brief a Motion for Leave to Exceed the Page Limit (D.E. # 53).  The Motion is **GRANTED**.  In the future, counsel for Defendant should seek leave to exceed the page limit in advance of filing the document which exceeds the page limit.  Counsel should also be prepared to show with greater particularity why the Court should depart from the default page limit.

that Plaintiff worked as a Tech III for eleven months.  Defendant argues that Plaintiff worked as a

trainee under the supervision of a Tech III learning the duties of the Tech III position.  Defendant

next responds to Plaintiff's claim in a footnote that direct evidence of disability discrimination exists

in this case.  Defendant contends that Glore's alleged comment that Plaintiff's speech might hold

him back is not direct evidence of discrimination.  The single comment is subject to more than one

interpretation and therefore does not amount to direct evidence of discrimination.  As for the issue

of whether Plaintiff's stutter was a disability, Defendant argues that Plaintiff has not shown that his

stutter limited his ability to work as a Tech III.  In response to Plaintiff's claim that Defendant treated

him differently during his training because of his speech, Defendant argues that Plaintiff never raised

this claim to his union representative.  Defendant also asserts that Plaintiff himself chose Bluitt to

conduct his third and final certification ride.  Plaintiff has failed to show that a similarly situated,

non-protected employee was treated more favorably.  Defendant finally clarifies other fact

contentions raised in Plaintiff's brief as evidence of possible pretext.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment

if the moving party "shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law.[28]  In reviewing a motion for summary judgment, the

evidence must be viewed in the light most favorable to the nonmoving party,[29] and the "judge may

---

[28] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[29] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

18

not make credibility determinations or weigh the evidence."[30] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[31] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[32] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[33] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[34]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[35] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[36]

## ANALYSIS

The Court holds that Defendant is entitled to judgment as a matter of law on Plaintiff's

---

[30] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[31] *Celotex*, 477 U.S. at 324.

[32] *Matsushita*, 475 U.S. at 586.

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[34] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[35] *Anderson*, 477 at 251-52.

[36] *Celotex*, 477 U.S. at 322.

claims for disability and age discrimination. The Court will analyze each of Plaintiff's theories in turn.

## I. Disability Discrimination

Title I of the ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[37]   As an initial question, the parties disagree over whether direct evidence of discrimination on the basis of disability exists in this case. Plaintiff argues that Glore's comment to Plaintiff that his speech might hold him back from achieving Tech III certification constitutes direct evidence. Plaintiff further argues that Lamar Lusk's statement that the customer service department "would be a better place once we get rid of [Plaintiff]" is direct evidence of discrimination. Defendant counters that these statements are not direct evidence and that Plaintiff must rely on the general burden-shifting analysis applied in cases presenting only circumstantial evidence of discrimination. "Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[38]   When presented with direct evidence, a finder of fact need not draw any inferences to decide that the employer's actions were the result, in whole or in part, of discrimination.[39] "Direct

---

[37] 42 U.S.C. § 12112(a).

[38] *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Thompson v. City of Lansing,* 410 F. App'x 922, 929 (6th Cir. 2011)).

[39] *Martinez*, 703 F.3d at 914-15.

evidence must prove not only discriminatory animus but that the employer acted on that animus."[40] Simply put, "[d]irect evidence explains itself."[41]

Viewing the alleged comments made by Glore and Lusk in the light most favorable to Plaintiff, the Court holds that the statements do not amount to direct evidence. With respect to Glore's comment, the statement does not reveal that Glore harbored discriminatory animus against Plaintiff because of his speech or stutter. According to Plaintiff's testimony, Glore made the statement during a conversation in which Glore praised Plaintiff for his performance in the training program. When Plaintiff asked Glore what his chances of receiving the promotion were, Glore responded that he did not anticipate Plaintiff "having any problems" but added that his speech might "hold [Plaintiff] back." Glore's alleged comment is ambiguous at best, and as such a reasonable juror would have to draw one or more inferences to find that Glore harbored some animus against Plaintiff because of his stutter. Even if Glore's comment did prove his discriminatory attitude towards Plaintiff, the statement does not directly prove that Glore acted on any discriminatory belief. Plaintiff testified that Glore made the comment on June 9, 2009, during the classroom portion of the training, some months before Plaintiff's certification ride with Glore on February 22, 2010. Therefore, the Court holds this testimony does not constitute direct evidence of discrimination.

The only other admissible proof cited by Plaintiff as direct evidence of discrimination is the comment of Lamar Lusk. Michael Jones, Plaintiff's union steward, testified to a conversation he once overheard between Plaintiff and Lusk. According to Jones, Plaintiff was complaining of being

---

[40] *Echols v. Kalamazoo Pub. Sch.*, No. 12-1369, 2012 WL 6115927, at *3 (6th Cir. Dec. 11, 2012) (citing *Amini v. Oberlin Coll.,* 440 F.3d 350, 370 (6th Cir. 2006)).

[41] *Martinez*, 703 F.3d at 916.

under pressure all of the time and stated it was having an effect on his home life.[42]  Lusk responded that he was "tired of hearing about this pressure" and that the department "would be a better place once we get rid of [Plaintiff]."[43]  While Lusk's comment evidences animus of some kind against Plaintiff, the statement is not directly addressed to Plaintiff's speech or stutter.  It cannot be said then that Lusk's statement requires "the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[44]  Therefore, the Court holds that Lusk's statement is not direct evidence of disability discrimination.

In the absence of direct proof of discrimination, the Court will analyze Plaintiff's disability claim under the *McDonnell Douglas* burden-shifting framework.  To make out a *prima facie* case of employment discrimination on the basis of disability, Plaintiff must prove that (1) he is disabled; (2) he is otherwise qualified for his position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) Defendant knew or had reason to know of the Plaintiff's disability; and (5) the position remained open while Defendant sought other applicants or Plaintiff was replaced.[45]  Once Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to articulate a non-discriminatory explanation for the employment action, and if Defendant does so, the burden shifts back to Plaintiff to prove that Defendant's explanation is pretextual.[46]  At summary judgment Defendant does not contest all of the element of Plaintiff's

---

[42] Jones Dep. 68:19-69:2, Dec. 7, 2012 (D.E. # 50-7).

[43] *Id.* at 69:3-8.

[44] *Martinez*, 703 F.3d at 914.

[45] *Whitfield v. Tenn.*, 639 F.3d 253, 258-59 (6th Cir. 2011) (citations omitted).

[46] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

*prima facie* showing.  The parties only dispute whether Plaintiff can prove that he is disabled and that he was otherwise qualified for his position.

## A. Plaintiff's Disability

Defendant seeks summary judgment on the issue of whether Plaintiff's stutter constitutes a disability for purposes of the ADA.  The Act defines the term "disability" to mean "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[47]  The Amended Act defines "major life activities" to include without limitation "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[48]  The implementing regulations advise that the "substantially limits" standard is not "demanding" and should be construed "broadly for expansive coverage."[49]  As such, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis."[50]

––––––––––––––––––

[47] 42 U.S.C. § 12102(1).

[48] § 12102(2)(A).

[49] 29 C.F.R. § 1630.2(j)(1)(I).  The regulation makes clear that the standard in the Amended Act was intended to be a departure from previous constructions of the ADA. *Id.* § 1630.2(j)(1)(iv) ("[T]he term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA.").

The Court may "rely on the regulations interpreting the ADA, which [the Court] assume[s] are valid unless contested. *Keith v. Cnty. of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013) (citation omitted).  Defendant has not contested the validity of the implementing regulations at summary judgment.  The Court finds then that it may rely on the regulations for purposes of its analysis.

[50] 29 C.F.R. § 1630.2(j)(1)(iii). *Cf. Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002) (defining "substantially limits" to mean "considerable" or to "a large degree").

In this case the parties dispute whether Plaintiff's stutter constitutes a physical or mental impairment that substantially limits one or more of his major life activities. Defendant maintains that Plaintiff has not proven how his stutter affected his ability to work as a Tech III. Therefore, Plaintiff cannot establish that his stuttering affected a major life activity. Plaintiff argues that the report of his expert Dr. Charles Manning shows that his impairment measurably affected his ability to speak, which is by definition a major life activity. Because the Court holds that the issue of Plaintiff's actual disability is not dispositive, the Court need not engage in "an extensive analysis" of the factual record briefed by the parties to determine whether Plaintiff's developmental stuttering affects a major life activity.

The regulations state that "[w]here an individual is not challenging a covered entity's failure to make reasonable accommodations and does not require a reasonable accommodation, it is generally unnecessary to proceed under the 'actual disability' or 'record of' prongs, which require a showing of an impairment that substantially limits a major life activity or a record of such an impairment."[51] Plaintiff has specifically denied that his is a failure to accommodate case.[52] Although Plaintiff argues that his stutter is an actual disability, the Court holds that Plaintiff need not prove that his stutter is "an impairment that substantially limits a major life activity or a record of such an impairment" in order to survive summary judgment.[53] As such, the Court need not resolve the fact-

---

[51] 29 C.F.R. § 1630.2(g)(3).

[52] *See* Pl.'s Resp. in Opp'n 2 n.2 (D.E. # 49).

[53] 29 C.F.R. § 1630.2(g)(3) ("An individual may choose, however, to proceed under the 'actual disability' and/or 'record of' prong regardless of whether the individual is challenging a covered entity's failure to make reasonable accommodations or requires a reasonable accommodation.").

intensive dispute between the parties over whether Plaintiff was actually disabled on account of his stuttering. To the extent then that Defendant seeks summary judgment for Plaintiff's failure to make this showing, Defendant's Motion is denied.

Defendant's opening brief argues in the alternative that Plaintiff has failed to prove that Defendant regarded him as disabled because of his stuttering.[54] Plaintiff responds that he can show that Glore regarded him as disabled based on Glore's statement that Plaintiff's speech "might hold [him] back."[55] The Act states

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.[56]

Here, viewing the evidence in the light most favorable to Plaintiff, Glore told Plaintiff that his stutter might prevent him from receiving the promotion to Tech III. As Plaintiff's classroom instructor during his Tech III training and the evaluator for Plaintiff's first certification ride, Glore was an influential decision-maker in Plaintiff's bid for promotion. More to the point, a reasonable juror could infer that Glore regarded Plaintiff as disabled because of his stutter, whether or not Glore

---

[54] Defendant has not cited any authority or argued the evidence on the issue of whether Defendant regarded Plaintiff as being disabled. As already discussed, Defendant largely focuses instead on whether Plaintiff has an actual disability.

[55] *See* Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 4 (D.E. # 47).

[56] 42 U.S.C. § 12102(3)(A). *But see Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (stating that under the Amended Act a plaintiff must prove that her employer "regarded her as having a physical or mental impairment that substantially limit[ed] one or more of her major life activities."). The Court would add that the Court of Appeals cited a pre-amendment ADA case for this proposition. *Id.* (quoting *Watts v. United Parcel Serv.*, 378 F. App'x 520, 525 (6th Cir. 2010)).

believed Plaintiff's speech actually impacted a major life activity.  The Court holds then that Plaintiff

has proof to satisfy this element of his *prima facie* case.  Therefore, Defendant's Motion must be

denied on this point.

## B. "Otherwise Qualified" for the Promotion

Defendant next seeks judgment as a matter of law on the issue of whether Plaintiff was

"otherwise qualified" for the Tech III position.  The ADA itself defines an individual as "otherwise

qualified" if he can perform the "essential functions" of the job he "holds or desires" with or without

reasonable accommodation.[57]  The Act goes on to state that "consideration shall be given to the

employer's judgment as to what functions of a job are essential, and if an employer has prepared a

written description before advertising or interviewing applicants for the job, this description shall

be considered evidence of the essential functions of the job."[58]  According to the regulations,

"essential functions" refer to job duties that are "fundamental" rather than "marginal."[59] The

regulations go on to specify a nonexclusive list of reasons that a job function may be considered

essential[60] and a nonexclusive set of factors to consider when determining whether a job function is

---

[57] 42 U.S.C. § 12111(8).

[58] *Id.*

[59] 29 C.F.R. § 1630.2(n)(1).

[60] § 1630.2(n)(2) ((1) "The function may be essential because the reason the position exists is to perform that function;" (2) "The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed;" and/or (3) "The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.").

essential to the position.[61]  The Sixth Circuit has held that whether "a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment."[62]

Defendant argues that Plaintiff failed in three different attempts at certification with three different, independent evaluators.  Thus, Plaintiff simply cannot prove that he was "otherwise qualified" for the promotion to Tech III.  Plaintiff responds that he possessed all of the eligibility criteria, passed all of the written tests during his training, and has the endorsement of an experienced Tech III who rode with Plaintiff scores of times during his eleven months in the customer service department.

Viewing the evidence in the light most favorable to Plaintiff, the Court holds that Plaintiff can prove he was "otherwise qualified" for his position.  The parties agree that Plaintiff possessed all of the eligibility requirements to enter the Tech III training program based on his seniority, a passing score the entrance test, and completion of the pre-training interview.  Once he was admitted to the training program, Plaintiff attended the classroom instruction, passed the written examinations, and then moved on to field training, which culminated in his three certification attempts.  According to one experienced Tech III who rode with Plaintiff a number of times during Plaintiff's probationary period, Plaintiff possessed all of the knowledge and skills necessary to be a Tech III.[63]  Defendant's

---

[61] § 1630.2(n)(3) ((1) the employer's judgment; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs).

[62] *Keith*, 703 F.3d at 925-26 (citation omitted).

[63] *Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 509 (6th Cir. 2010) (finding that evidence from co-workers and customers attesting to an ADA plaintiff's qualifications for the job he held sufficient to make out the "otherwise qualified" prong).

27

adverse action against Plaintiff, the denial of certification to work as a Tech III, occurred while Plaintiff was still a Tech III trainee.  Viewing this evidence in the light most favorable to Plaintiff, the Court concludes that a reasonable juror could find by a preponderance of the evidence that Plaintiff was qualified for his position as a Tech III trainee at the time Defendant decided not to promote Plaintiff to Tech III.

Defendant emphasizes that Plaintiff was not otherwise qualified for the position of Tech III because he failed his certification attempts during his Tech III training.  Defendant's argument improperly conflates two different stages of the *McDonnell Douglas* burden-shifting framework. Defendant claims that Plaintiff was not qualified for the Tech III position because of his failure to achieve certification and at the same time claims that its legitimate reason for denying Plaintiff the promotion to Tech III was Plaintiff's failure to achieve certification.  The Sixth Circuit has held in anti-discrimination cases that district courts should assess whether the plaintiff is "otherwise qualified" for his or her position at the *prima facie* stage without considering the employer's legitimate, nondiscriminatory reason for its adverse action against the plaintiff.[64]  Instead, for purposes of the plaintiff's *prima facie* showing, the courts should only assess the plaintiff's

---

[64] *Gaglioti v. Levin Grp., Inc.*, No. 11-3744, 2012 WL 6217365, at *3 (6th Cir. Dec. 13, 2012) (applying rule in ADEA case); *Sokolnicki v. Cingular Wireless, LLC*, 331 F. App'x 362, 366-67 (6th Cir. 2009) (same); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) (applying rule in Title VII sex discrimination case); *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002) ("Instead of using the discharge justification to judge whether Cicero was qualified at the prima facie stage [of his ADEA claim], the Court should only consider the employer's proffered reason in the later stages of the *McDonnell Douglas* analysis."); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 662-63 (6th Cir. 2000) (applying rule in pregnancy discrimination case).

qualifications "prior to and independent of the events that led to the adverse action."[65]  For example,

in *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003), an ADEA case Defendant

cites for support of its position that Plaintiff was not "otherwise qualified," the Sixth Circuit held

that "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse

employment action when analyzing the *prima facie* case."[66]  The Court of Appeals explained that

"[t]o do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to

show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."[67]

The Sixth Circuit has applied the same rule to claims under the ADA.[68]  Defendant's contention then

that Plaintiff was not "otherwise qualified" for his position because of his three failed attempts at

certification runs afoul of this rule.  For all of these reasons, the Court finds that Defendant's

argument on this point is not persuasive.  Therefore, Defendant's Motion is denied as to this issue.

## C.  Pretext

The remaining *prima facie* elements of Plaintiff's ADA claim are not disputed for purposes

of summary judgment.  The burden now shifts to Defendant to articulate a legitimate reason for not

---

[65] *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006) (applying rule in pregnancy discrimination case) (citations omitted).  *See also Rosebrough v. Buckeye Valley High School*, 690 F.3d 427, 433 (6th Cir. 2012) (holding that "there can be no logical basis for requiring [an ADA plaintiff] to have a CDL to be 'otherwise qualified' for the position of training to obtain a CDL" where the plaintiff was hired as a school bus driver trainee but failed to obtain her commercial drivers license).

[66] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (*en banc*).

[67] *Id.* (citing *Cline*, 206 F.3d at 660-61).

[68] *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013) (applying rule to claim of retaliation under the ADA); *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

certifying Plaintiff as a Tech III during one of his certification rides.  The largely undisputed evidence shows that the three independent evaluators noted specific deficiencies in Plaintiff's ability to handle certain Tech III tasks, including gas-related tests and repairs.  Based on these deficiencies, each evaluator determined that Plaintiff did not demonstrate competence to receive certification as a Tech III.  At summary judgment Plaintiff admits the mistakes observed by the evaluators and documented in their written reports during Plaintiff's attempts at certification.  The Court holds then that Defendant has carried its burden of production to articulate a legitimate, nondiscriminatory reason for denying Plaintiff promotion to Tech III.

The burden now shifts back to Plaintiff to demonstrate by a preponderance of the evidence that Defendant's reasons are pretext for discrimination.  Plaintiff can make this showing in one of three ways: (1) Defendant's proffered reason has no basis in fact, (2) Defendant's proffered reason did not actually motivate the decisions not to certify Plaintiff as a Tech III, or (3) Defendant's proffered reason was insufficient to motivate its decision.[69]  Put another way, Plaintiff's burden "is to produce sufficient evidence from which a jury may reasonably reject the employer's explanation" and infer discrimination.[70]  Even then summary judgment for the defendant may be appropriate "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had

---

[69] *Martinez*, 703 F.3d at 915.

[70] *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012).

occurred."[71]

The Court holds that Plaintiff has cited no evidence to support any of these possible showings and has failed to carry his burden to establish pretext. Plaintiff admits that he made the mistakes observed by his evaluators during the three certifications rides, though Plaintiff claims that the mistakes were minor and the evaluators were "nitpicky." It cannot be said then that Defendant's reasons for not certifying Plaintiff have no basis in fact. Plaintiff has not cited any relevant case law on pretext in his relatively short summary judgment brief. Plaintiff has cited, however, a number of facts, which arguably show that Defendant treated Plaintiff differently during his Tech III training. Based on Plaintiff's recitation of this evidence, Plaintiff appears to make two separate arguments that go to the pretext issue.

First, Plaintiff seems to contend that Defendant failed to follow its own training policies and procedures and in doing so denied Plaintiff the same training opportunities Defendant provided to other trainees, all because of Plaintiff's speech. For example, Plaintiff claims that Harper, his supervisor during his 90-day probationary period, did not conduct an evaluation ride with Plaintiff until four days before Plaintiff's first certification ride. According to Plaintiff, Harper should have conducted an evaluation ride with Plaintiff much earlier in the probation period. Harper himself testified that Plaintiff needed at least two weeks to "shore up" on areas in which Harper found Plaintiff to be deficient. Plaintiff cites other evidence that Defendant did not follow normal training policies. For instance, at the outset of his probationary period, Plaintiff was not equipped with all of the proper tools, though the evidence shows Plaintiff was later provided with the correct tools.

---

[71] *Griffin v. Finkbeiner*, 689 F.3d 584, 593-94 (6th Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Plaintiff also claims that he had to complete his second certification ride in a "raggedy" truck and was given only one day (as opposed to two days) on the ride.

The Court holds that viewing this evidence in the light most favorable to Plaintiff, these facts do not establish pretext. "[A]n employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext."[72] The Court notes that this evidence amounts to seemingly minor deviations from Defendant's training program, which would not prove that Plaintiff's disability was the "but for" cause of his failed certification attempts.[73] The only problem Plaintiff notes about the third certification ride was the fact that his chosen evaluator Milton Bluitt knew that the ride was in connection with a grievance and that Bluitt did not meet with Plaintiff prior to the ride.[74] The Court holds that Plaintiff's evidence that Defendant did not follow its own training policies and procedures is simply not enough to prove pretext and show that

---

[72] *White*, 429 F.3d at 246.

[73] Furthermore, these facts relate to events which Plaintiff raised through the proper channels with his union and which the parties resolved through the grievance process. The evidence shows that in an effort to settle Plaintiff's grievances about his training and first two certification rides, the parties agreed that Plaintiff would have a third certification ride with an evaluator of Plaintiff's own choosing. *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 522 (6th Cir. 2002) ("We need not reach the correctness of the district court's decision in this regard because Plaintiff filed a grievance regarding his discharge, and was subsequently returned to work by a grievance committee with his seniority, back pay, and retirement benefits restored. Thus, Plaintiff was made whole, and we agree that his claim was properly dismissed by the district court albeit for different reasons.").

[74] Bluitt actually testified that he generally met with a trainee during his probationary period to put the trainee more at ease during the subsequent certification ride. Bluitt Dep. 25:15-26:12. In this case Bluitt did not meet with Plaintiff before the ride. But it is further undisputed that Plaintiff never worked with Bluitt during his probationary period and in fact had never worked with Bluitt at any time prior to his certification ride. *Id.* at 31:8-17. As such, it is not clear that this testimony actually proves a deviation from Bluitt's normal procedures, much less establishes pretext.

Plaintiff's speech was the true reason for Defendant's decision to deny Plaintiff his Tech III certification.

Second, Plaintiff appears to argue that Defendant's proffered reasons for not certifying Plaintiff were insufficient grounds to deny him certification as a Tech III. Plaintiff cites examples of non-protected, similarly situated trainees who received more favorable treatment than Plaintiff. Proof of similarly situated employees engaging in the same conduct as Plaintiff but receiving more favorable treatment might show that Defendant's stated reasons were insufficient to explain Defendant's decision to deny Plaintiff certification.[75] "In order to show that an employer's proffered nondiscriminatory explanation is pretext on the grounds that a similarly situated employee received disparate treatment for the same conduct, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects."[76] The Court holds that Plaintiff has not adduced such evidence here.

The two non-protected comparator trainees cited by Plaintiff, Douglas Rayburn and Brenda Flowers, are not similarly situated Tech III trainees who received more favorable treatment. Rayburn is not a relevant comparator because Rayburn like Plaintiff never passed certification. In other words Rayburn received the same treatment as Plaintiff, and not more favorable treatment. As for Flowers, it is undisputed that both Plaintiff and Flowers completed classroom instruction with Glore during their Tech III training, albeit at different times. It is further undisputed that Plaintiff outperformed Flowers in classroom testing and that both Plaintiff and Flowers failed initial attempts at certification

---

[75] *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 378-79 (6th Cir. 2002).

[76] *Id.* (emphasis in original) (citation and internal quotation marks omitted).

with Donald Cupples.[77]  However, unlike Plaintiff, Flowers was ultimately certified as a Tech III.[78]
Even so, the Court finds that Plaintiff has not proven how Flowers and Plaintiff were similarly
situated in all relevant respects.  Flowers passed her certification ride with a different supervisor,
Connie Kerr.  Plaintiff has failed to show that he ever attempted certification with Kerr or received
any other field training or evaluation from her.

The Sixth Circuit has cautioned that two comparators may still be similarly situated in all
relevant respects even though they had different supervisors.[79]  "Whether it is relevant in a particular
case that employees dealt with the same supervisor depends on the facts presented."[80]  In this case
the Court finds that an identity of certification evaluators is highly relevant.  Here the evidence
shows that evaluators exercised independent judgment in deciding whether to certify a trainee.  As
a result, the fact that Flowers finally certified with Kerr and Plaintiff never rode with Kerr is a
significant distinction.  Moreover, Plaintiff has not demonstrated that Flowers worked with any of
the same Tech III's or other area supervisors during her 90-day probationary period or even worked
out of the same MLGW service center as Plaintiff.  Trainees generally worked during their probation
under experienced Tech III's and an area supervisor, leading up to the final certification ride.  In fact,
Plaintiff relies on evidence from Sydney Broady, one of the Tech III's with whom he trained during
his probation, to establish that Plaintiff possessed all of the skills to be a Tech III.  At Plaintiff's

---

[77] Cupples Dep. 24:3-13, Dec. 5, 2012 (D.E. # 50-4).

[78] Glore Dep. 32:17-33:9, Dec. 4, 2012 (D.E. # 50-5) (stating that Flowers had to retake
eight of the ten written tests during the classroom training because she did not obtain a passing
score on her first attempt).

[79] *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (citations omitted).

[80] *Id.* (citations omitted).

request Defendant assigned him to MLGW's South Center for his probationary field work.[81] However, Plaintiff has not shown that he and Flowers worked with the same Tech III's or the same area supervisor.  In light of these distinctions, the Court concludes that Plaintiff has failed to show how Flowers was similarly situated in all relevant respects.[82]

Finally, Plaintiff has cited the comment of Lamar Lusk that customer service would "be better off" without Plaintiff.  As previously discussed, the remark does not implicate Plaintiff's disability in any way.  Plaintiff has not provided the Court with any context for Lusk's remark such as when he made it,[83] who was present when he made it, or why he said what he said.  Other than to state that Lusk selected Donald Cupples to conduct Plaintiff's second certification ride, Plaintiff has not come forward with any evidence to prove that Lusk had any input or influence over the decisions of three separate evaluators to deny Plaintiff certification.  In short, Plaintiff has not shown

---

[81] Def.'s Statement of Undisputed Facts ¶¶ 36, 39.

[82] The undisputed evidence further shows that Plaintiff's four cohorts in the training program all achieved certification on their first attempts with Glore.  However, Plaintiff has not argued the evidence to show how these other trainees were similarly situated to Plaintiff in all relevant respects.  For instance, Plaintiff has not proven that any of his cohorts engaged in substantially similar conduct on their certification rides with Glore (i.e. made mistakes) and received more favorable treatment.  Plaintiff has also not shown that his cohorts completed their field experience in the same service center, working with the same Tech III's as Plaintiff.  Therefore, the Court does not consider Plaintiff's four training cohorts as comparators for purposes of the pretext analysis.

[83] Based on the testimony of Michael Jones, Lusk apparently made the remark some time after Plaintiff had failed his first two attempts at certification.  Jones testified that Plaintiff complained about being under pressure to achieve certification after his failed attempts. Jones Dep. 69:24-70:18, Dec. 7, 2012 (D.E. # 50-7).  Lusk responded that he was tired of hearing about Plaintiff's pressure and asked Plaintiff if he wanted the pressure "at the beginning or the end." *Id.* at 70:16-71:3.  It is not at all clear what Lusk meant in this comment.  Jones went on to testify that Lusk then made his comment that customer service would be a better place without Plaintiff. *Id.* at 72:4-11.

how the remark would establish any of the three possible showings to prove pretext. Therefore, the Court concludes that Lusk's isolated remark does not show that Defendant's legitimate reasons for denying Plaintiff his Tech III certification were pretext for discrimination.

Having concluded that Defendant had a legitimate, nondiscriminatory reason for not certifying Plaintiff as a Tech III and that Plaintiff has failed to show how Defendant's reasons were pretextual, Defendant's Motion is **GRANTED** on Plaintiff's ADA claim.

## II. Age Discrimination

Defendant is also entitled to summary judgment on Plaintiff's claim of age discrimination. Plaintiff must show that he can prove the following elements of a *prima facie* case under the ADEA: (1) he is a member of the protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.[84] This burden is "not onerous" and "poses a burden easily met."[85] Even so, Defendant argues that Plaintiff cannot prove the fourth element, that another non-protected employee received a promotion, because Plaintiff has adduced no proof of any non-protected comparator. Plaintiff does not address the argument in his memorandum of law but does assert in his responses to Defendant's statement of undisputed fact that he is not required to adduce proof of a comparator under age 40.[86] Plaintiff cites *Browning v. Dept. of Army,* 436 F.3d 692 (6th

---

[84] *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812-13 (6th Cir. 2011) (citations omitted).

[85] *Id.* (citations omitted).

[86] Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 108, 109.

Cir. 2006) for support.  Plaintiff's argument is without merit because *Browning* actually requires an age discrimination plaintiff to prove that "he was replaced by someone substantially younger."[87] However the Court casts the fourth element of this claim, Plaintiff has the burden to come forward with proof of some kind that a non-protected employee received more favorable treatment than Plaintiff.  Plaintiff admits that he has no such evidence.[88]   Therefore, Defendant's Motion is **GRANTED** as to Plaintiff's age discrimination claim.

<u>CONCLUSION</u>

While Plaintiff has adduced evidence to make out his *prima face* claim for disability discrimination under the ADA, the Court holds that Plaintiff has failed to show that Defendant's legitimate reasons for denying Plaintiff promotion to Tech III were pretext for discrimination. Likewise, Plaintiff has failed to prove all of the elements of his claim for age discrimination in violation of the ADEA.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to both of Plaintiff's claims.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 10, 2013.

---

[87] *Browning v. Dept. of Army,* 436 F.3d 692, 695 (6th Cir. 2006).

[88] Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 108, 109.

37